# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CASE NO. 2:24-CR-004(1)** |
| Plaintiff, | **JUDGE EDMUND A. SARGUS, JR.** |
| vs. | |
| **BUFORD D. LOWRY,** | |
| Defendant. | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States submits this Sentencing Memorandum in connection with Burford Lowry's upcoming sentencing hearing. The Government agrees with the guidelines calculations from the Presentence Investigation Report, which yield a sentencing range of 84–105 months of imprisonment. The Government respectfully requests that the Court impose a low-end term of 84 months of imprisonment, to be followed by a three-year term of supervised release.

## I.  BACKGROUND

In 2023, ATF agents began investigating Buford Lowry for suspected firearm trafficking. Undercover agent(s) met with Lowry several times. During one of those meetings, Lowry sold the agents a pill press. On four other occasions, Lowry brokered the sale of firearms from himself and two associates, Timothy Ferrell and Gerald Harden, to the undercover agents. In total, Lowry facilitated the sale of fourteen firearms – many with large capacity magazines – to the agents, who held themselves out as gun dealers who were moving the guns to New Jersey for resale.

On January 9, 2024, the grand jury returned a nine-count indictment against Lowry, Ferrell, and Harden. Specifically, the indictment charged Lowry with one count of distributing a pill press (Count 1), one count of conspiracy to traffic in firearms (Count 2), one count of being a felon in possession of a firearm (Count 4), and one substantive count of trafficking in firearms (Count 5).

On August 1, 2024, Lowry pled guilty to one count of conspiracy to traffic in firearms (Count 2) under a non-binding plea agreement. The Government agreed to dismiss the remaining counts at the time of sentencing. In that plea agreement, the parties reached several sentencing stipulations regarding Lowry's Base Offense Level and applicable enhancements that resulted in a Total Offense Level of 23. The plea agreement contained no stipulations as to Lowry's criminal history scoring.

## II.  The Applicable Guidelines Range

The PSR calculated a Total Offense Level of 23, which mirrored the stipulations from the parties' plea agreement, and a Criminal History Category of V, resulting in a guidelines range of 84–105 months of imprisonment. Neither party has objected to those calculations, so the Court should adopt them for sentencing.

## III.  Possible Departures from the Applicable Guidelines Range

The PSR did not find any factors that would warrant a departure from the applicable guidelines range. The Government agrees.

## IV.  Consideration of the Sentencing Factors from 18 U.S.C. § 3553(a)

Careful consideration of the statutory sentencing factors shows why this case calls for a within-guidelines sentence, albeit one at the low-end of the range.

### A. The Nature and Circumstances of the Offense

The nature and circumstances of the offense are troubling. Lowry – a repeat felon – repeatedly sold and brokered the sale of over a dozen firearms to relative strangers whom he knew were planning on using those firearms for illegal purposes. The firearms that Lowry sold and/or brokered were no ordinary guns. Several of them were high-caliber assault rifles. At least four of the guns came equipped with large capacity magazines (ten total), including an AR-style assault rifle that came with three different 30-round magazines and a 41-round magazine for good measure. Worse still, *all* the guns passed from Lowry (a felon), Harden (a felon), and/or Ferrell to undercover agents who were explicit about their plans defile the serial numbers from the guns before moving them to New Jersey for quick resale and profit.

Lowry's conduct upon learning of his federal charges and arrest warrant present aggravating factors as well. Lowry was informed of his federal charges on January 20, 2024, when ATF agents arrested his co-defendant, Timothy Ferrell, at his home. Agents went to Lowry's house to arrest him too, but he had just left. Agents informed his wife of his pending warrant and the need to turn himself in. She claimed she relayed that message to Lowry on multiple occasions. Undersigned counsel also contacted Lowry's attorney, Gregg Slemmer, on or about January 20th, and informed him that Lowry needed to turn himself in. Despite these repeated warnings, Lowry went on the lam for three months. Agents did not find him until April 24th.

 Taken together, these aggravating factors show that a within-guidelines sentences is warranted.

**B. The History and Characteristics of the Defendant**

Lowry's history and characteristics point to the same result, particularly when the Court focuses on his lengthy criminal history, the vast majority of which scored no criminal history points due to the dates of his sentencing hearings or the short duration of those sentences. Regardless, Lowry, who is forty-five years old, has amassed *twenty-five* criminal convictions as an adult, including multiple convictions for burglary and firearm-related offenses. And even with most of his convictions not scoring, he still managed to amass ten criminal history points – placing him in the second highest criminal history category (CHC V).

Lowry was forty-four when he committed this offense. As a child, his parents were married, but his father was incarcerated for most of his upbringing. His mother worked a lot to support the family, so she did not take an active role in his upbringing. They moved from home-to-home frequently and sometimes lived out of his mom's car. Lowry began drinking at age seven and began abusing narcotics when he was just nine years old. His mother kicked him out of the house when he was thirteen. He smoked marijuana and abused powder cocaine and crack cocaine daily until his arrest in this case. Lowry went as far as the 8th grade in school. He was frequently suspended for fighting and truancy. During past stints in prison, he participated in a masonry vocational program and pre-GED coursework. He has not, however, earned his GED. Lowry has been married since 2008. He and his spouse have two children (now adults) together. Lowry was reportedly an active father to both. Lowry was working as an off-the-books contractor prior to his most recent arrest.

### C.  The Remaining Sentencing Factors

The Government has considered the remaining sentencing factors and submits that none of them take this case outside the "heartland" of firearm-trafficking cases. Staying within the guidelines will encourage Lowry's respect for the law, deter him and others from further crimes, and protect the public from his involvement with firearms.  *See* 18 U.S.C. § 3553(a)(2)(A)-(C).  A within-guidelines sentence will also avoid unwarranted sentencing disparities.  *Id.* § 3553(a)(6); *United States v. Houston*, 529 F.3d 743, 752 (6th Cir. 2018) ("Considering that one of the fundamental purposes of the Guidelines is to help maintain national uniformity in sentences, and considering that most sentences are within the Guidelines, the Guidelines themselves represent the best indication of national sentencing practices.").

### V.  CONCLUSION

For these reasons, the United States respectfully requests that the Court impose a within-guidelines sentence of 84 months of imprisonment, to be followed by a three-year term of supervised release.

Respectfully Submitted,

KENNETH L. PARKER
United States Attorney

s/Noah R. Litton
NOAH R. LITTON (0090479)
TYLER J. AAGARD (NC 54735)
Assistant United States Attorneys
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
Phone: (614) 469-5715
Email: Noah.Litton@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Sentencing Memorandum was served electronically on all counsel of record on this 12th day of December, 2024.

                                             s/Noah R. Litton
                                             NOAH R. LITTON (0090479)
                                             Assistant United States Attorney